UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE BELLA COMPANY, INC.,

        Plaintiff,

Case No. 2:09-cv-11517

v.

Hon. George Caram Steeh

SALONQUEST LLC,

        Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter comes before the court on plaintiff's motion for summary judgment (Dkt. #48). While captioned a motion for summary judgment, the only relief requested by plaintiff in its motion is a declaration that the agreement governing the relationship between the parties may only be terminated as set forth in section 12 of the agreement. Thus, plaintiff seeks a portion of the relief requested in count IV (declaratory judgment) of its complaint. Defendant filed a response to plaintiff's motion for summary judgment and plaintiff filed a reply. Oral argument occurred at a hearing on November 29, 2010. For the reasons set forth below, plaintiff's motion for partial summary judgment is DENIED.

BACKGROUND

On May 10, 2005, plaintiff and defendant entered into a distributorship agreement involving defendant's line of Aquage brand salon products. The agreement provides for plaintiff to serve as a distributor of Aquage on an exclusive basis in Michigan. Plaintiff was a start-up company in 2004 and is owned by Richard Orrico. In reaching the terms of the distributorship agreement, Richard Orrico represented plaintiff and Dennis Lubin

represented defendant. Defendant drafted the agreement. Section 2 of the agreement provides:

> Term of Agreement. The term of this Agreement shall commence as of the date this Agreement is signed by both parties and shall end four years later on the last day of the month in which it was signed. However, unless terminated by either party in accordance with Section 12, the term of this Agreement shall be automatically renewed and extended for an additional one year term at the end of the initial term and each renewal term.

Section 12 provides:

> Distributor [plaintiff] may terminate the term of this Agreement by giving Company [defendant] written notice of termination at least thirty (30) days prior to the effective date of termination specified in the notice. Company may elect to make termination by Distributor effective on an earlier date than specified by Distributor by giving Distributor written notice at least three (3) business days prior to such earlier effective date of termination.
>
> Company [defendant] may terminate the term of this Agreement for Cause by giving Distributor written notice of termination at least ninety days prior to the effective date of termination specified in the notice...

Section 12 defines cause as (1) plaintiff's failure to pay an invoice; (2) plaintiff's assignment of the agreement; (3) a change in control over plaintiff's business; (4) plaintiff's failure to meet or exceed specified performance levels; (5) plaintiff's failure to use its best efforts to promote defendant's products; (6) any violation of defendant's diversion policies; (7) any violation of defendant's distribution policies; (8) any violation of defendant's trademark or copyright policies; or (9) plaintiff's bankruptcy or insolvency.

On January 28, 2009, four months prior to the expiration of the agreement's initial four-year term, defendant gave plaintiff notice that it would allow the agreement to expire on May 31, 2009. Plaintiff asserts that the notice by defendant violated the agreement because the agreement automatically renews at the end of the initial four-year term and then again each year unless plaintiff chooses to terminate the agreement or unless

defendant has cause to terminate the agreement under section 12. Plaintiff asserts that Mr. Lubin assured Mr. Orrico that plaintiff "didn't have anything to worry about" because the agreement would automatically renew. Defendant argues that section 2 provides for renewal unless one of the parties affirmatively acts to cancel the agreement at the end of a term. Defendant asserts that the provisions in section 12 set forth the circumstances under which the parties may terminate the agreement during a term, rather than at the expiration of a term.

On April 22, 2009, plaintiff filed a four-count complaint in which it alleges (1) breach of contract of the agreement's exclusivity provision; (2) anticipatory breach of contract of the termination provision; (3) fraud and misrepresentation; and (4) declaratory judgment. On October 2, 2009, defendant filed a motion seeking partial judgment on the pleadings on the last three counts. On February 5, 2010, the court issued an opinion and order denying defendant's motion for partial judgment on the pleadings. In its opinion, the court found defendant's interpretation of section 2 was not required. Instead, the court found that the interpretation urged by plaintiff was also a reasonable reading of section 2 of the agreement.

On September 16, 2010, plaintiff filed a motion for summary judgment, seeking a declaration that the agreement may only be terminated by defendant for cause, in accordance with section 12 of the agreement. Thus, the interpretation of the termination provisions in the agreement is again before the court.

STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment forthwith if the "pleadings, depositions, answers to interrogatories and admissions

3

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

ANALYSIS

Under Ohio law, which governs the agreement, if the terms of the contract are not ambiguous, the court applies "the plain language of the contract." City of St. Mary's v. Auglaize County Bd. Of Comm'rs,, 115 Ohio St. 3d 387, 390 (2007). A contract term is ambiguous when it is susceptible to two conflicting but reasonable interpretations. United Tel. Co. of Ohio v. Williams Excavating, Inc., 125 Ohio App. 3d 135, 153 (Ohio App. 3 Dist. 1997). The court may not consider parol evidence when determining whether a contract

is ambiguous. Shifrin v. Forest City Enter., Inc., 64 Ohio St. 3d 635, 638 (1992). Only if a contract is ambiguous on its face will the court consider parol evidence. Id. Moreover, the court should read the agreement as a whole and should give meaning to each provision of the agreement. Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority, 78 Ohio St. 3d 353, 362 (1997). The rules of contract interpretation are designed to ascertain, and give effect to, the parties' intent. Id.

In this case, both parties set forth reasonable interpretations of section 2 of the agreement. Plaintiff argues that the second sentence of section 2 must be read as a qualification to the first sentence. Plaintiff argues that, although the first sentence contemplates termination after a four-year term, the second sentence mandates that the agreement is automatically renewed unless terminated in accordance with section 12. Plaintiff thus argues that defendant may only terminate for cause, pursuant to section 12, whether during a term or after a term. Plaintiff argues that any other interpretation ignores the word "however" in the second sentence and therefore violates the rule that the court should give meaning to every part of a contract.

In contrast, defendant notes that section 2 provides for a four-year term and subsequent one-year terms. Defendant argues these terms were included with the intention that either party could cancel the agreement without cause at the end of a term. If neither party cancels, the agreement is automatically renewed and extended for a one-year term. At the end of the one-year term, the parties would again have the option of cancelling the agreement or allowing the agreement to automatically renew for an additional one-year term. Defendant argues the termination methods set forth in section 12 apply only to cancellation during a term. If the agreement is given plaintiff's

5

interpretation, and the provisions of section 12 control termination both during and after a term, the provision of terms becomes meaningless. In addition, the specific language utilized in section 12 supports defendant's interpretation. Section 12 provides the method by which each party "may terminate the term of this Agreement," suggesting the termination takes place <u>during</u> a term.

The court determines that the agreement is ambiguous, as the two conflicting interpretations of the termination provisions of the agreement set forth by the parties are both reasonable.

Plaintiff argues "all ambiguities are to be construed against SalonQuest, which wrote the contract." Plaintiff argues defendant is the drafter of the contract, and should have included explicit language providing for termination without cause in section 2, if that was defendant's intention. Between its original brief and reply brief, Plaintiff cites five cases in support. In two of the cases cited, the principle that a contract should be construed against the drafter was stated but not applied. See <u>Graham v. Drydock Coal Co.</u>, 76 Ohio St.3d 311, 314 (1996) (noting principle, but finding parties' intentions determinative); <u>Keymer v. Management Recruiters International, Inc.</u>, 169 F.3d 501, 505 (8th Cir. 1999) (finding the contract language clear and unambiguous, but stating that principle would apply if language was ambiguous). In another two cases, other contract principles supported the non-drafter's interpretation. See <u>Brakefire, Inc. v. Overbeck</u>, 144 Ohio Misc. 2d 35, 57 (2007) (in case where employer drafted the contract, court adopted employee's interpretation, noting the principle that contracts should be construed against the drafter but also finding that the language of the contract and the conduct of the parties supported employee's interpretation); <u>Mead Corp. v. ABB Power Generation, Inc.</u>, 319 F.3d 790, 797-98 (6th Cir.

2003) (affirming because ambiguous language should be construed against drafter, in case where district court adopted same interpretation because interpretation was proper under principles that every provision in a contract should be given effect and that the court should give effect to the parties' intentions). In the fifth case, the Ohio Supreme Court simply noted the principle of "contra proferentem" in allowing expert testimony on the meaning of a technical provision of the contract which was interpreted differently by the plaintiff and defendant. McKay Machine Co. v. Rodman, 11 Ohio St.2d 77, 80 (1967).

In response, defendant argues ambiguous contracts should be construed against the drafter only when the parties lack equal bargaining power. Defendant cites two unpublished Ohio appellate court decisions in support. See 4746 Dressler, LLC v. Fitzpatrick Enter., Inc., Case No. 08-CA-00155, 2009 WL 2457126, *5 (Ohio App. 5 Dist. Aug. 3, 2009) (noting "Ohio courts have generally resolved contract ambiguities against the drafter only where parties lack equal bargaining power to select contract language," reversing trial court's construction of the agreement against the drafter when both parties were sophisticated entities, and remanding for "a factual determination of the intent of the contracting parties"); In re Myer, 2000 Ohio App. LEXIS 4102, *6 (Ohio App. 11 Dist. Sep. 8, 2000) (noting the general principle referenced above and adopting the non-drafter's interpretation as it was consistent another provision in the agreement). Defendant argues both parties to the agreement at issue in this case are small but, sophisticated, businesses. Defendant notes that: (1) Mr. Orrico's family had owned a professional beauty distributorship; (2) Mr. Orrico and Mr. Lubin had three or four meetings regarding the agreement; (3) Mr. Orrico reviewed the agreement with a lawyer; and (4) plaintiff successfully negotiated for exclusivity in Michigan. During the hearing, the parties disputed

the amount of negotiation that took place as the parties entered into the agreement.

The court finds that the cases cited by plaintiff do not dictate judgment as a matter of law for plaintiff. In this case, plaintiff's interpretation of the contract does not give meaning to important portions of the contract, particularly the provision of terms. The ambiguity in this case is not so slight as to be resolved by the principle of "contra proferentem" which, as plaintiff's counsel admitted during the hearing, is "a last resort."

Plaintiff also argues the court should consider parol evidence from Mr. Orrico, plaintiff's owner, that he was told when he signed the agreement that the contract would automatically renew. However, defendant submitted a counter-affidavit from Mr. Lubin, defendant's representative, stating defendant intended to commit itself for an initial four-year period, during which time it could only cancel for cause pursuant to section 12. Mr. Lubin also states defendant understood the agreement would automatically renew for an additional one-year term only if neither party acted to allow the agreement to expire at the end of the period. As a factual dispute exists, the parties' intentions are not dispositive in this case.

Last, plaintiff argues defendant's interpretation is inconsistent with sections 5(c) and 12 of the agreement. Section 5(c) provides that, if plaintiff's performance is substandard for two consecutive years, defendant has the right "to terminate the term of this Agreement" by providing written notice to plaintiff. Plaintiff argues that if defendant had the right to terminate at the conclusion of any term, the two-year interval set forth in section 5(c) would be meaningless because defendant could terminate at the end of the one-year supplemental term instead of waiting for two consecutive years of poor performance. The court disagrees. Defendant's interpretation of section 5(c) is also reasonable in light of the

initial four-year term of the agreement during which time defendant contractually agreed to limit its termination rights. Moreover, the specific language utilized in granting defendant the right to terminate for cause – the right "to terminate the term of this Agreement" – supports defendant's interpretation that section 5(c) applies to termination <u>during</u> a term. Plaintiff makes similar arguments regarding section 12's provisions defining cause for termination. Plaintiff notes that section 12(b)(i) allows a 10-day chance to cure and a 90-day notice of termination. Again, the court finds defendant's interpretation of this provision is also reasonable as it would provide defendant a right to terminate <u>during</u> a term with cause. The specific termination language used in section 12 mirrors the language in section 5(c) – allowing defendant to "terminate the term of this Agreement" under certain conditions. The court does not believe defendant's interpretation of the agreement conflicts with the language of sections 5(c) and 12.

The court finds the termination provisions in the agreement are ambiguous. Thus, the court looks to extrinsic evidence and the agreement as a whole to determine the parties' intentions. Viewing the evidence in the light most favorable to the non-movant, the court finds a material factual dispute exists regarding the parties' intentions on termination of the agreement.

<u>CONCLUSION</u>

For the reasons set forth above, plaintiff's motion for partial summary judgment is DENIED.

Dated: December 7, 2010

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 7, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk